323-0036 Christopher Cwik, Appellant v. Manteno Community Fire Protection District and Scott O'Brien, Appellees. All right, Mr. Eberhardt, you may proceed. Thank you. For the record, Your Honors, Stephen E. Eberhardt on behalf of Appellate Christopher Zwick. May it please the Court, Honorable Justices, Counsel, Before addressing what I think is one of the more difficult issues, that is, Defendant O'Brien's individual liability, I'd like to quickly note that neither the dismissal of Plaintiff's common law retaliatory discharge claim against the District, as pled in the original complaint, on 2-619 grounds, nor the Plaintiff's statutory 20.1 claim that the Circuit Court disregarded in the second amended complaint, were ever addressed by the Defendants on appeal. As noted in our briefing, I believe and submit this should be viewed as a concession of those issues on appeal. With regard to Defendant O'Brien's individual liability, I submit it's properly before this Court for consideration, based on the specific facts of this case, as distinguishable from our Supreme Court's decisions in Buckner and Smith. As a union member, Plaintiff, Defendant O'Brien, and the District were all bound by the terms of the collective bargaining agreement. That agreement specifically incorporated the terms of the Fireman's Disciplinary Act. It's clear that the agreement protected the Plaintiff, as was evidenced by Defendant O'Brien's letter, regarding the claimed investigation into the ambulance incident, that specifically noted it was intended, and I'll quote from the original complaint, to serve as the formal investigative notice as required by 50 ILCS 745-Fireman's Disciplinary Act." Also- Council, what about, and I apologize, this is our third argument today, but I think it was 8-2, isn't there something in the collective bargaining agreement that specifically exempts probationary employees from the protections? It exempts them from certain of the protections, but it does not exempt them totally from the protections of the Fireman's Disciplinary Act. And while I apologize it's late in the day for me also, I can't right now point to a specific point, but it's all laid out in our briefs that generally the Fireman's Disciplinary Act was incorporated into the collective bargaining agreement. It did say, for instance, that probationary employees could be fired for no reason whatsoever. It kind of parroted the language of Illinois law, but I submit to the court when Chief O'Brien used those certain provisions, he acknowledged, the defendants acknowledged that those provisions were applicable to the plaintiff himself and the district. So is your position that because O'Brien provided more process than the collective bargaining agreement otherwise required, is it related to probationary employees, that he was then stuck with those requirements? No, Your Honor. It's our position that when you read the terms of the collective bargaining agreement, it specifically makes certain provisions with regard to the Fireman's Disciplinary Act applicable to all employees, whether you're probationary or whether you're not. And that is in the Exhibit A to the first amended complaint. And again, I'm sorry, I don't have it right at my fingertips. But when you go into Exhibit A in the first, the original complaint, it talks about discipline. And then when it goes through the discipline, it lays out provisions of the Fireman's Disciplinary Act that are applicable. And it's our position, not that Chief O'Brien gave him more process, but he was abiding by the terms of the collective bargaining agreement, as is evidenced by what I just read, and we pled in the complaint, to serve as the formal investigation notice. And going along with the formal investigation notice, O'Brien, defendant O'Brien, I believe, under the terms of the collective bargaining agreement, was required to make a contemporaneous, either a transcript or recording of that meeting on December 22nd in 2020, and he didn't. And I think that is probably the most important evidence of the fact that the use of the ambulance investigation was just a ruse to try and cover up defendant O'Brien's true intent that no matter what. And I have to admit, Illinois law is clear. He doesn't have to have a reason. For instance, if defendant O'Brien said, I just don't like the way that this guy laces up his boots, we wouldn't have a claim. But the fact that it was all done is a ruse because defendant O'Brien was dissatisfied with plaintiff, plaintiff Zwick saying, look, we got hurt out there. You need to train your firefighters better. You need to do a better job for us. You need to do a better job for the public. It's clear on a motion to dismiss at this stage that it was a whistleblower complaint, and we're entitled to move on beyond the motion to dismiss to basically be able to prove up our case after we have some discovery. Moving along to why your honor should consider disregard, not disregarding, but in light of the Supreme Court's language in Buckner where they say, and this is at page 22 of the Buckner decision, as explained above, the power to hire and fire employees is ultimately possessed only by the employer. Consequently, the tort of retaliatory discharge may be committed only by the employer. And at Smith, the Supreme Court language is at page 117. As Smith suggests, it is not the public entity's employee who causes the retaliatory discharge. Rather, it is the employer. But when you look at the collective bargaining agreement, defendant O'Brien had the sole ability. I won't say responsibility. He had the sole decision-making authority to terminate fire Zwick from his position. That's evidenced by the fact that he did it on December 22nd. He didn't notify the board until December 31st. And in fact, the collective bargaining agreement even says, as the defendants pointed out, you have no recourse to the board. So the decision is 100% defendant O'Brien's. He did it. He is responsible for it. And if he is not held liable, because the cases can be, this case can be distinguished from the precedent set by the Supreme Court in Buckner and its progeny. If O'Brien is not held liable, that means that there's no recourse for any employee, any probationary employee in the state of Illinois to be protected for whistleblowing activities. And as we all know, that clearly is not the law. Now, with regard to Judge Albrecht's other rulings dismissing the original complaint, I think they can be easily dealt with. There's no basis to dismiss that common law retaliatory discharge claim on 2619 grounds. With all due respect, she didn't explain. I think quite possibly she just got confused when she was writing, writing these things off, making dismissals and forgot about the district. There's no basis and there's no reason to dismiss. When I look at the original complaint, I mean, and this is not a rhetorical question, so I apologize if it's too basic, but I'm reading the complaint. I'm not being able to distinguish between a statutory, you know, retaliatory discharge and a common law retaliatory discharge. I mean, is there anything in the complaint that's telling me which one or both or how you're proceeding in that regard? I will admit, Your Honor, that it is not written with precision to specify out the common law and the statutory. The way it was written, though, and I think it has and it's consistent with reviewing it for purposes of a motion to dismiss. Even though, admittedly, it's a little jumbled, you cannot, for purposes of a motion to dismiss, grant the motion to dismiss if any valid claim is stated. And the claim against the district as written, I think it's clear enough to understand that that's a common law claim. And when it gets to the specifics of the statutory whistleblowers act, and that's what Judge Albrecht said to do, be a little more specific about the whistleblower act, because obviously she recognized the same things. So we did that in the First and Second Amendment complaint. And it's unfortunate, like I say, it's not the essence of precision. But I submit on behalf of the plaintiff that we're on solid ground because the law in Illinois is clearly when you have a valid complaint, even if you claim, you know, even if I claimed that it was a defamation complaint, but I got the elements in there for a retaliatory discharge complaint, the courts are prohibited from dismissing it if we have laid out a complaint. Did the briefing in opposition of the motion to dismiss assert that this was a common law retaliatory discharge complaint? Or did everyone just assume it was a statutory retaliatory discharge? My recollection now is that the defendants did address it in both ways. Second, I'll move forward to, oh, I just want to make one other point is, and obviously, you know, I'm well aware that this district's opinion in City of Ottawa is not precedential. But I think that that decision gives some insight into the mind of the court. We've attached an Exhibit E to our brief. And I submit to your honors that this is now the time to address these issues in a written opinion. And, you know, make clear that the law is precedential out there in what I'll ultimately say should be a reversal of the circuit court. Now, the second amendment complaint, your honor, further particularly detailed specific supervisors and whistleblowing topics that Zwick tried to continually discuss with those supervisors. And I submit that the major failing of the defendant's argument is that defendants continually tried to equate supervisors, quote unquote, with wrongdoers, quote unquote, while the complaint clearly differentiated between those two. Throughout the proceedings on the motions to dismiss, the defendants ignored that the Brame case made clear that a statutory action is proper when one complains to his own supervisors in his own agency. In dismissing the second amendment complaint, Judge Parkhurst didn't even cite Brame, didn't even cite Sweeney, just said you can't. You cannot report it just to your own supervisors, which is in complete opposition to the Brame decision. Sweeney distinguishes Brame in regards to where if you make your complaint only to the wrongdoer, then you don't fall within the statutory provisions. But again, you know, we laid out the supervisors versus the wrongdoers, and there was absolutely nothing pled that said Zwick was only complaining to the wrongdoers. Now, I'll point out that Judge Parkhurst didn't address plaintiff's claim under the statutory section 20.1 that I'm going to suggest to the court is actually the statutory catch-all of the common law claim. And when she didn't address section 20.1 and the defendants didn't make any response in their brief, I submit that that in and of itself also warrants reversal so that we can consider those issues. Now, moving along to the defendant's rules and regulations argument, there was a lot of back and forth in the motions on this, but the defendants don't offer any real response to the fact that the fire district is a municipal corporation. They're an alter ego of the state, and all of those rules and regulations, by definition under Illinois law, are rules, regulations, policies, and procedures of the state by the fact that they were promulgated by the fire district. That's all laid out in our brief, and I submit to the court that that's proven, again, by Defendant O'Brien's reliance on those rules and policies when he wanted to potentially discipline Zwick. And even the defendants in their briefs relied on some of those policies and provisions. I think it was the 8.2 that Your Honor pointed out, which means no matter how you interpret them, they are rules and regulations that can be relied on or they're rules and regulations of the state so that Section 15.1 applies. Counsel, you're suggesting that when a local fire agency like this makes a rule or regulation, it somehow now becomes a state rule or regulation? By virtue of the fact that they are an alter ego of the state and the case law that we put into our brief about municipal corporations, I'll put it in these terms, Your Honor. The state could not possibly promulgate rules and regulations for every fire district to advance the public policy of fire safety. They make the fire districts a municipal corporation, which is an alter ego. So just by virtue of convenience, they do it on behalf of the state. So they are rules. Does the state require them to have policies and procedures? I believe that, yes, and I believe it's laid out in our brief under the rules of the creation of fire districts by the legislature. Thank you. I think you've answered my question as it relates to that. Yes, is that important? Any additional questions? None. We'll have an opportunity, Mr. Eberhardt, in reply. Thank you. Mr. Rose. Good afternoon, members of the panel. My name is Jason Rose. I represent the Mantino Fire Protection District and Chief O'Brien. We're asking that the court affirm the lower court's dismissal of the case and also affirm the denial of two very unfortunate motions for sanctions, which were filed by counsel. I want to first, I'll work backwards. I'll try to respond to some of the things that Mr. Eberhardt just said. What we have in these various complaints, it's a hot mess and there's a lot going on here. But the first question that was directed at Mr. Eberhardt was based on the CBA and Section 8.2, and it can be found at 56, page 56 in the record. And let me just read it quickly. A probationary period shall be 12 months following the date of hire. During the probationary period, a firefighter is entitled to all rights, privileges and benefits, except as limited by the terms of the agreement, which limitations include that the fire department may suspend or discharge a probationary employee without cause, and such employees shall have no recourse to the grievance procedure or the district trustee's board of fire commissioners to contest the suspension or discharge. So what we have here is on the one hand, Mr. Eberhardt is saying, look at the CBA. And then on the other hand, he wants to completely disregard the language contained within the CBA. And the first thing that Mr. Eberhardt said is, well, they just did this as a ruse. You don't need to you don't need a ruse to terminate a probationary employee. It's at will employment. They could have just said we're we're going to fire you. Thanks for playing. Instead, there was something that occurred on December 20th during a call. The fire chief said, I want to talk to you about this, gave him a notification. If you and that's also in the record. And if you look at those memos, he wrote what happened. He said, well, he wouldn't even sign the acknowledgement form. And he got defensive. And and so I'm firing him. So for for Mr. Eberhardt to say, well, you know, first, it's a ruse that doesn't make any sense. And then to say that because you were willing to hear him out and hear what he has to say, that you're then entitled to all of these other indicia of due process. He received more than he was entitled to under the CBA. And that's clear. And then after that, when he talks about Chief O'Brien, he essentially acknowledges that there's a Supreme Court case right on point. And that opinion says that you can't fire. You can't you know that you can't sue an employer agent because, in fact, the employer in this case is the Fire Protection District. And so it appears that what Mr. Eberhardt is is asking for is, I mean, if he wants to protect his rights to go to the Illinois Supreme Court to see if if the Supreme Court wants to revisit the law. Well, I suppose he has that prerogative. But the fact is, the law is clear on that point. And so the initial dismissal of the fire chief was certainly proper. Also, that was proper was. OK, so, yes. And then in terms of what the law is, Romanek versus Board of Fire and Police Commissioners. And again, it's clear that that in language which foreshadowed this case, the court observed that a police department need not rely on a candidate's performance on written and physical exams at the time of hiring. And then a probationary period is critical for fire and police departments since it provides the department an opportunity to assess how officers react in situations of unmonitored trust, grave responsibility and severe stress. So, counsel, you would agree, though, that even though he's a probationary at will employee, and even though under 8.2, he's not afforded the protections that non-probationary employees are afforded under the CBA. Setting all that aside, even though he's an at will employee, he cannot be discharged if the reason for discharging him is he's reporting a violation of a statute, right? Right, right. We're not saying that a whistle act, there can be a whistleblower act claim even with a probationary employee. So we we agree with that. There's no dispute about that. So how about a common law claim? OK, so counsel even admits that the complaint is really a jumble. I think he's being kind to it. It's really a mess. And I don't recall any distinction in the complaint saying versus a common law or versus a whistleblower act. But the important thing to remember about that is that the law in Illinois is clear that the whistleblower act essentially codified. What was previously there were whistleblower whistleblower claims allowed in Illinois before the act. So I don't see that as a distinction that we have two types of cases. They're the same case. It's a whistleblower claim. And and so what how do we determine what a whistleblower claim looks like? Well, we look to we now since the whistleblower act has been adopted, we look at the actual language of the whistleblower act to determine whether there is a proper claim. No. OK. And so there's three problems here that are with respect to the various complaints that have been filed. You know, one one is that there's, you know, there's no initial disclosures here. No internal disclosures, meaning the law is clear and there is Brame and there's Sweeney. We believe Brame is distinguishable. And then there's both Sweeney, which is the fourth district. And then there's Runge, which is an unpublished opinion from the second district. But what those cases talk about is under the whistleblower act. The key here is the key thing that courts look at is what is the disclosure? And so typically in a case you have an employee going to a governmental agency or a law enforcement agency and they're complaining about what the employer did. What we have here, though, is there is no second agency. We have an employee, a disgruntled employee who claims that he complained to his supervisors about their own misconduct. Now, Mr. Everhart just now said, well, there's a distinction here between the wrongdoers and who it was reported to. If you look closely at the complaint, I don't think that holds up. If you look at the complaint, he is complaining in the complaint that there was that there was a call that was mishandled and that it wasn't properly reported, that there was improper staffing and that there was it was basically a lack of reporting and improper staffing. So who is responsible for reporting and staffing and training? Oh, that was the third one. Reporting, staffing and training. Well, again, he complained to the chief, the fire chief, as well as the direct supervisors. And again, those people were responsible for training, staffing and reporting. Now, he says that there's other wrongdoers. Well, who were the other who were the wrongdoers? I can't tell from the complaint who the wrongdoers were or what they what these phantom people supposedly didn't do. There's just nothing there. It just doesn't it just doesn't make any sense. He's complaining to his bosses about what they did wrong. That is, is, I believe, clear from the complaint. So we don't have we don't have an outside disclosure. We have a disclosure complaints which have been made by Mr. Swift to his direct supervisors. The other problem and I'm sorry, I'm dry. Disclosures must be about a violation of state or federal law, rule or regulation. And that comes direct, you know, that comes directly from the Whistleblower Act. We don't have that here. We don't have a state or a federal issue. He had a plaintiff has not identified anything at a state level or a federal level that the fire protection district violated. I have 2 questions if I may. Yeah, I published cases saying that the whistleblower act does not apply to municipal ordinances or county ordinances. I don't I'm not aware of any case that discusses that, but again, the, they could have I would say that if they wanted to say state. It could have said state, federal or local. They didn't say that though. I have another question. It's a little related. So, going back to this distinction between the common law whistleblower or act, or sorry, whistleblower case law and the whistleblower act. My recollection is that the common law whistleblower case law. Was potentially a little broader in scope. Than the whistleblower act specifically, for example, I think it might have allowed. Uh, you know, a complaint if somebody was making a claim that an action by. A state actor violated public policy or things that were perhaps a little broader than statutes or regulations. Is that still good law or did the whistleblower act somehow. Circumscribe the broader scope of the common law. Sure, it's a, it's a valid question. I don't want to act like I can answer that. It's certainly an interesting. It's an intriguing legal question. I can't answer that. I will say, for example, if you look at brain on the 1 hand and. You look at Sweeney and Rungy on the other hand, you see how the law evolves all 3 cases discuss this sort of internal reporting. And, you know, I think there is some tension between, say, brain and Sweeney and Rungy. And so, again, you see time and time. These cases are sort of ad hoc. And the fact. Do do seem to matter as you would expect. So I would say that we have the whistleblower act, and we have the exact language of the whistleblower act, and we should be giving effect to the actual language. And and in this case, the language says, you know, state or federal. Mr. Rose, if we can stay on that theme, assuming that the common law, or the cases prior to the change in the statute. Are still good law I'm looking at stabbing right now, which was cited by the appellate in the case. And the facts of the case, unless you're familiar with them, I can maybe jog your memory, but this was. It was not a violation of any particular law. State or federal law or statute, but it was a condition that was causing great concern and great harm to citizens. So they found it to be important enough state of cause of action. And rate on mitigation was part of this. Issue, how would you argue let's assume that. That this common law claim is is viable in the sense that it's appropriate if pled properly. What would you say about the pleadings in this particular case as they relate to public policy, as opposed to just good work practices. Sure. Um, and I think that's an important. Um, even if you want to give the complaint, the benefit of the doubt on the point of state or federal. I think the problem then comes with the last problem being that a whistleblower actions must be in furtherance of a clearly mandated public policy. And, and if you look at the Supreme Court's holding in in Turner versus Memorial Medical Center. They really do put some teeth to that. The courts continually say dismiss a whistleblower claims when a public policy can Is stated to generally or where it doesn't provide specific guidance or where it's so vague, it can be subject to multiple interpretations. Here we have what is is admittedly by plaintiff's counsel a mess of a complaint here and and what is that public policy. He just refers generically to the fire departments. Internal policies. And by the way, the internal policies are very explicit and they say that they can't be used for the very purpose that Mr. Everhart is seeking to To do, which is essentially turn it into a civil suit. So those that is directly in these internal policies. They're there for training and guidance. They're not there to create a right on behalf of Mr. Zwick or a basis for a lawsuit, which is exactly what we have here and exactly what plaintiff is doing. Um, I see the light. It's on. So I would be happy to answer any other questions, but I otherwise I would be starting something that I can't finish and I don't think the court would care for that. Justice Heddle or Justice Davenport any additional questions. No. Very well. Thank you, Mr. Everhart reply. First of all, I'll just take exception to Mr. Rose's characterization characterization of the complaint being a mess based on my admissions to the court. It's not And with regard to the common law claim steppings is still good law and warrants reversal. Mr. Rose also admitted when there was the conversation about section 8.2. The bottom line is Retaliatory discharge is still improper. Even when the employee is a probationary employee section 8.2 of the collective bargaining agreement does not, you know, from that because bottom line, you cannot enforce a contract that is either contrary to public policy or itself violates public policy. And the fact that probationary employees are still protected from retaliatory discharge. If they are whistleblowers falls right in that area. Get into a little bit more specific as it relates to the common law. I mean, on one end, one could look at this as someone who was disgruntled about the fact that the procedures that were set forth to do the job safely. We're not being followed and you may argue that's enough. Do you believe that that's enough simply, you know, the misuse of a water cannon and and hurting and other individuals that is that a public policy that we're looking at? Yes, Your Honor. I will point you in the court to page 43 of our brief where we cite the past Karnas case that involved the Woodridge Fire Protection District officer who merely complained to his fire agency that our part-timers are not being properly trained. And then when you go to paragraph 44, we talk about Chicago Firefighters Union, local number two in the city of Chicago versus Fraternal Order of Police that talks about the unquestionable public policy interest in the safety of firefighters and the public based on that. So, with past Karnas being good law saying a mere complaint, I don't want to say the word mere, a complaint that part-time firefighters are not even being trained properly warranted reversal. In this case, not only is it improper training, it's improper use of, and I'll get into this, you know, we did make the distinction. Again, wrongdoers are the staff of the engine who used the deck gun, who hit the plaintiff and one of the deputy fire chiefs, who improperly used the resources that endangered, you know, striking that fire as quickly and as safely as they could. So this goes well beyond what was found to be sufficient in past Karnas. Again, the defendants admit 8.2, you know, it doesn't trump whistleblower protection of a probationary employee. So I've talked about wrongdoers versus supervisors. I believe the defendants are wrong. 8.2 cannot trump the protections of either common law whistleblower protections or the act. And I think now at this point, even the defendants and I are in agreement, you know, the common law provisions and the statutory provisions coexist. Common law provisions are broader, as the court has pointed out through questioning with regard to Stebbins. And actually what the Whistleblower Act does is in that 20.1 is it gives the broader reach like the common law, but what it does and what the districts don't like is it specifically talks about attorneys fees and penalties and all that kind of stuff. So it put a little more bite into basically, you know, what a plaintiff could sue for, instead of trying to find some lawyer who knows that he's not going to, you know, I shouldn't even say the lawyer doesn't want to get paid for, you know, protecting the public's interest and protecting the interests of these first responders in doing their jobs properly. I mean, this is a 615, 619 dismissal case, Your Honor. It should be simple questions, not a trial on the merits on the motions to dismiss, not personal attacks when you can't figure out a way of getting around, you know, questionable issues. Mr. Rose started talking about the sanctions motion. Those are properly in front of the circuit court in the first instance. The matters are in the record. I think that it's very... Mr. Weber, the red light is on. If you could please conclude. One more, because just 615, 619 is easy, very easy. It doesn't need to be this complicated. It's not meant to be this complicated. Based on everything that we've talked about today, Your Honors, I ask that the case be reversed and sent to the circuit court in Kankakee County. Thank you. Justice Hedl or Justice Davenport, any follow-up questions? No. Counsel, you filed a motion for sanctions after you lost the motion to dismiss. You ever done that before? Yes, because my... You've answered my question. Okay. The court thanks both sides for spirited arguments. We will take the matter under advisement and issue a decision in due course.